

**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Forest Capital, LLC, | * | Case No. 16-13850-MMH |
| | * | |
| Debtor. | * | Chapter 11 |
| | * | |
| *  *  *  *  *  * | * | *  *  *  *  *  * |
| | * | |
| Forest Capital, LLC, | * | |
| | * | |
| Plaintiff, | * | Adversary No. 16-00337-MMH |
| v. | * | |
| | * | |
| Fischer Porter & Thomas, P.C., et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

*  *  *  *  *  *  *  *  *  *  *  *  *  *

### <u>AMENDED MEMORANDUM OPINION</u>

A trustee in bankruptcy[1] generally may avoid any postpetition transfer of property belonging to the bankruptcy estate that is not authorized by the U.S. Bankruptcy Code[2] or the court. 11 U.S.C. § 549. Some courts have determined that the trustee's ability to recover an avoidable postpetition transfer is limited if the transferee has a secured claim against the estate. *See* 11 U.S.C. § 550; *In re C.W. Min. Co.*, 477 B.R. 176 (B.A.P. 10th Cir. 2012). The logic of

---

[1] A debtor in possession, as the Plaintiff in this adversary proceeding, possesses the same avoidance powers as the bankruptcy trustee under section 1107 of the Bankruptcy Code. 11 U.S.C. § 1107.

[2] 11 U.S.C. §§ 101, et seq. (the "Code").

this approach rests on the fact that the transfer to the secured creditor actually reduces the secured creditor's claim against the estate, which reduction will be reinstated and repaid from the estate if the transfer is avoided. *In re C.W. Min. Co.*, 477 B.R. at 185. Under this approach, the analysis focuses on whether avoidance of the postpetition transfer provides a benefit to the estate.

This adversary proceeding requires the Court to evaluate both the avoidance of an alleged postpetition transfer and the transferee's liability for the same if the transferee asserts a valid and perfected lien in the transferred property. Specifically, Fischer Porter & Thomas, P.C. (the "Defendant") made a postpetition transfer of property in the amount of $25,000.00 to itself (the "Postpetition Transfer") in payment of certain prepetition legal fees. Forest Capital, LLC, the debtor in possession in this chapter 11 case and the plaintiff in this adversary proceeding (the "Plaintiff"), asserts that the Postpetition Transfer constitutes an avoidable transfer under section 549 of the Code and is moving for partial summary judgment on that basis. The Defendant's opposition to that motion turns largely on section 550 of the Code and the reasoning of *In re C.W. Mining Company*. The Defendant moreover grounds its request for partial summary judgment on its secured creditor status and the legal services it provided to a nondebtor party.

As more fully explained below, and based on the facts currently presented in this adversary proceeding, the Court finds that the Defendant has not established a valid and enforceable attorney's lien under applicable state law. The Court further determines that the Defendant received the Postpetition Transfer in violation of section 549 of the Code. The Court is not, however, directing repayment of the Postpetition Transfer at this time. The Plaintiff's Motion for Partial Summary Judgment does not seek relief under section 550 of the Code. In

addition, the Court finds that there are genuine issues of material fact concerning the liability of the Defendant to repay all or part of the Postpetition Transfer, as well the nature, extent, and scope of its claim against the estate. Accordingly, the Court grants the Plaintiff's Motion for Partial Summary Judgment to the extent that it seeks to avoid the Postpetition Transfer, and it denies the Defendant's Cross Motion for Partial Summary Judgment in its entirety.

## I.      General Background

On March 24, 2016, an involuntary petition for relief under chapter 7 of the Code was filed against the Plaintiff. The Plaintiff thereafter consented to the entry of an order for relief and moved to convert the case to one under chapter 11 of the Code. The Court granted the Plaintiff's motion on May 5, 2016, and the Plaintiff has been operating its business as a debtor in possession since that time.

Prior to the petition date, the Plaintiff and DiGeronimo, P.C. ("DiGeronimo") entered into a Leveraged Account Agreement and certain related documents (collectively, the "Factoring Documents"). The Factoring Documents concern the financing of DiGeronimo's accounts receivable. Also prior to the petition date, the Defendant represented DiGeronimo in various collection matters involving DiGeronimo's accounts receivable. In one such prepetition matter, the Defendant received a settlement payment in the amount of $100,000.00 (the "Settlement Payment") from Seneca Construction Management Corporation ("Seneca"). The Defendant paid $75,000.00 of the Settlement Payment to DiGeronimo and applied the remaining amount to the payment of its outstanding legal fees. The Defendant received and applied the Settlement Payment after the petition date.

On July 14, 2016, the Plaintiff commenced this adversary proceeding against the Defendant and DiGeronimo. The Plaintiff's Complaint [ECF No. 1] asserts numerous causes of

action relating to the Settlement Payment. The Defendant and DiGeronimo filed a joint Answer [ECF No. 6] on September 7, 2016. The Plaintiff then filed an Amended Complaint [ECF No. 27] and a Motion for Partial Summary Judgment [ECF No. 28] on August 31, 2017.[3] The Plaintiff's Motion for Partial Summary Judgment seeks the avoidance of the Postpetition Transfer under section 549 of the Code. The Defendant filed its Opposition to Motion for Partial Summary Judgment and Cross Motion for Partial Summary Judgment [ECF No. 35] on September 14, 2017, and its Answer to the Amended Complaint [ECF No. 36] on September 22, 2017. The Defendant's Cross Motion for Partial Summary Judgment seeks judgment in its favor on Counts I, III (to the extent related to the Postpetition Transfer), IV, and VI of the Amended Complaint.

On October 27, 2017, the Court held a hearing for purposes of oral argument on the Plaintiff's Motion for Partial Summary Judgment and the Defendant's Opposition to Motion for Partial Summary Judgment and Cross Motion for Partial Summary Judgment. The Court has reviewed the relevant pleadings and exhibits, including the Debtor's Opposition to Fischer's Cross Motion for Partial Summary Judgment [ECF No. 42], and considered the statements of counsel at oral argument. The following summarizes the Court's analysis and determinations concerning the pending matters in this adversary proceeding.

## II.    Relevant Legal Standards

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, governs the parties' respective motions for partial summary judgment. A moving party may be entitled to judgment as a matter of law under Civil Rule 56 in the absence of any genuine issue of material fact. Fed. R. Civ. P. 56. *See Emmett v. Johnson,* 532 F.3d 291,

---

[3] The Plaintiff has filed a motion to settle its dispute with DiGeronimo [ECF No. 38]. Accordingly, DiGeronimo is not involved in this particular matter.

297 (4th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). *See also Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing standards for summary judgment). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett*, 532 F.3d at 297.

Section 549 of the Code states, in relevant part, that "the trustee may avoid a transfer of property of the estate … that occurs after the commencement of the case; and … that is not authorized under this title or by the court." 11 U.S.C. § 549. As explained by the United States Court of Appeals for the Fourth Circuit in *In re Merry-Go-Round*, "a 'transfer' is defined broadly as 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property.'" 400 F.3d 219, 224–225 (4th Cir. 2005) (quoting 11 U.S.C. § 101(54)). Moreover, section 550 of the Code provides that "to the extent that a transfer is avoided under section … 549 … of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from, among others, the initial transferee of such transfer. 11 U.S.C. § 550.

## III.    Analysis

The two primary issues before the Court are whether the Defendant received a postpetition transfer of estate property in violation of section 549 of the Code and, if so, whether the Defendant must return that property to the estate under section 550. In addition, the Defendant has requested summary judgment on certain Counts in the Amended Complaint based on its alleged status as a secured creditor and its legal services provided to a nondebtor party. The Court will address each issue in turn.

A.  Section 549 and Avoidance of the Postpetition Transfer

As the Fourth Circuit explained in *In re Merry-Go-Round*, "the recovery by a Trustee of post-petition transfers from the bankruptcy estate requires, under the Statute, the satisfaction of four elements: (1) a transfer, (2) of property of the estate, (3) made after commencement of the case, and (4) that is not authorized under the Bankruptcy Code or by the bankruptcy court." 400 F.3d at 224. *See also* 11 U.S.C. § 549. The Plaintiff presented sufficient evidence to establish each of the required elements under section 549, and the Defendant failed to identify any genuine issues of material fact with respect to these elements.

First, the record shows that the Defendant deposited the Settlement Payment in its trust account on May 24, 2016. Ex. 3 to Pl.'s Mot. Partial Summ. J., ECF No. 28. The Defendant then applied $25,000.00 of this amount to the payment of its outstanding legal fees. *Id*. The Defendant's withdrawal of $25,000.00 from its trust account to pay its legal fees is a transfer under section 101(54) of the Code.

Second, the Plaintiff established that the Postpetition Transfer was property of the debtor's estate. The Plaintiff cited the language of the Factoring Documents, which provides, among other things, that the Plaintiff was assigned the "full power to collect" DiGeronimo's accounts receivable. Ex. 1, Section 1.3, Pl.'s Mot. for Partial Summ. J., ECF No. 28-1. Although the Defendant suggested at oral argument that the Plaintiff might be the owner, rather than the assignee, of the account receivable underlying the Settlement Payment and the Postpetition Transfer, it did not offer any evidence to contradict the estate's general interest (whether as an owner or assignee) in the Postpetition Transfer. Record at 11:07:30.

Third, at oral argument, the parties did not contest that the Defendant received the Postpetition Transfer after the petition date in this case. Record at 10:08:50 and 10:24:05. The

undisputed nature of this fact is also supported by the parties' respective pleadings.[4] The record is less clear concerning the Defendant's knowledge of the Plaintiff's chapter 11 case when it received the Postpetition Transfer. Nevertheless, the parties acknowledged, and the Court agrees, that the Defendant's knowledge (or lack thereof) of the pending bankruptcy case is irrelevant to the section 549 determination. Record at 10:54:05 and 11:02:20.

Finally, the Defendant does not contend that the Postpetition Transfer was authorized by the Code or this Court.

Based on the foregoing, the Court finds that the Postpetition Transfer constitutes an unauthorized postpetition transfer of estate property in violation of section 549 of the Code. The Plaintiff is entitled to judgment, as a matter of law, that the Postpetition Transfer is avoided in its entirety under section 549 of the Code.[5]

B.   Section 550 of Code and the Defendant's Liability for the Postpetition Transfer

If a transfer is avoided under section 549 of the Code, the trustee may then seek to recover the transferred property, or its value, for the benefit of the estate under section 550 of the Code. 11 U.S.C. §§ 549, 550. Although Count VI of the Amended Complaint seeks recovery of various transfers from the Defendant and DiGeronimo under section 550 of the Code, the Plaintiff's Motion for Partial Summary Judgment does not request relief under, or otherwise

---

[4] *See, e.g.*, Exhibit A to Declaration of Arthur L. Porter, attached to Defendant's Cross Motion for Partial Summary Judgment, ECF No. 35-1 (showing that Defendant received the Settlement Payment on May 20, 2016); Exhibit B to Declaration of Arthur L. Porter, attached to Defendant's Cross Motion for Partial Summary Judgment, ECF No. 35-1 (showing that Defendant received the Postpetition Transfer on May 26, 2016); Exhibit 3 to Plaintiff's Motion for Partial Summary Judgment, ECF. No. 28-3.

[5] The Court notes that the Plaintiff by its Motion for Partial Summary Judgment requests "summary judgment in its favor and against the Defendant in the amount of $25,000.00, plus interest thereon from and after the date of demand at the highest legally permissible rate." Pl.'s Mot. for Partial Summ. J. 7–8, ECF No. 28. By this Order, the Court grants only the avoidance of the Postpetition Transfer under section 549 of the Code. The extent and amount, including any interest award, of the Defendant's liability for that avoided transaction are issues to be resolved under section 550 of the Code. As explained herein, the Plaintiff did not request relief under section 550 in its Motion for Partial Summary Judgment.

address, that section.[6] As such, the Court views part III.A of this opinion as fully addressing the relief requested in the Plaintiff's Motion for Partial Summary Judgment.

The Defendant, on the other hand, does address section 550 of the Code in the context of both its opposition to the relief requested by the Plaintiff and its request for partial summary judgment on Count VI of the Complaint. The Defendant argues that it has a valid and perfected statutory attorney's lien on the settlement funds and that, as a result, it does not have to repay the Postpetition Transfer to the estate. The Defendant's request for partial summary judgment is addressed further below.

The Defendant's argument concerning the futility of avoiding a postpetition transfer received by a secured creditor is grounded in sections 549, 550, and 502(h) of the Code. These sections work together to provide that a trustee may avoid and then recover postpetition transfers from creditors under sections 549 and 550 and that such creditors then hold claims against the estate "the same as if such claim[s] had arisen before the date of the filing of the petition" under section 502(h). Notably, courts interpret section 502(h) as reinstating the prepetition claim. As explained by the U.S. Court of Appeals for the First Circuit, "the natural import of this language—especially the words, 'shall be determined, and shall be allowed ... the same as if such claim had arisen before the date of the filing of the petition'—is that the 502(h) claim takes on the characteristics of the original claim, including, in this case, its secured status." *Fleet Nat'l Bank v. Gray (In re Bankvest Cap. Corp.),* 375 F.3d 51, 67 (1st Cir. 2004). The court in *In re C.W. Mining Company* adopted this approach to section 502(h) and noted that "[o]rdering avoidance and recovery under these circumstances is pointless because the secured creditor

---

[6] The Court acknowledges that the Plaintiff's Motion for Partial Summary Judgment does request "such other and further relief as the Court deems appropriate." Pl.'s Mot. Partial Summ. J. 8 ECF No. 28. The Court does not find this catchall language sufficient, however, to warrant consideration of section 550 of the Code as part of the Plaintiff's Motion given the separate Count in the Amended Complaint and the separate statutory analysis required for any such relief.

would simply pay money over to the bankruptcy estate or trustee who, in turn, would then be required to return to the secured creditor the value of its secured claim." 477 B.R. 176, 185 (B.A.P. 10th Cir. 2012).

The Court finds symmetry in the *In re C.W. Mining Company* approach to sections 549, 550, and 502(h). The Court also agrees with the interpretation of section 550 that focuses on the language of the statute (i.e., "the trustee may recover, for the benefit of the estate") and its purpose (i.e., to restore the estate when estate assets have been depleted by avoidable transfers). *See, e.g., id.* at 185. If the estate ultimately will pay out the recovered assets to the transferee because of its secured status, the estate has not been depleted and retains no additional benefit from recovery of the subject transfer. Nevertheless, as discussed below, sections 549, 550, and 502(h) do not help the Defendant based on the record currently before the Court in this adversary proceeding.

The Defendant argues that the reasoning of *In re C.W. Mining Company* applies to its position in this adversary proceeding because it holds a valid and perfected statutory attorney's lien on the funds making up the Postpetition Transfer. The extent of the Defendant's secured interest in these funds is determined by New Jersey state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The New Jersey Attorney's Lien Statute, N.J.S.A. 2A:13-5, is titled "Lien for Services" and provides:

> After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien

> for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.

The New Jersey Supreme Court has explained that "the [New Jersey Attorney's Lien] Act is grounded in equitable principles and was designed to protect attorneys who have represented their former clients competently and with diligence, but have gone unpaid." *Musikoff v. Jay Parrino's the Mint, L.L.C.*, 796 A.2d 866, 874 (N.J. 2002).

Under the New Jersey statute, an attorney is granted a lien in her client's claim (and the proceeds thereof), which arises upon the commencement of the underlying action or the filing of the specified pleading. Although courts generally agree concerning the creation and attachment of a lien under the statute, they do not agree upon the steps necessary for the perfection and enforcement of that lien. The majority of federal and state courts in New Jersey appear to require additional steps by the attorney in order for the attorney's lien to be valid and enforceable as to the client's claim (and related proceeds). These courts frequently cite *H. & H. Ranch Homes, Inc. v. Smith* for guidance on the relevant issues. 148 A.2d 837 (N.J. Super. Ct. App. Div. 1959). In that case, the New Jersey Superior Court found that that "[a]n examination of the statute discloses that a lien arises upon the filing of the counterclaim by an attorney and attaches to such counterclaim." *Id.* at 840. The court continued, however, to explain that attorneys must do something more to "determine and enforce" the lien. The court stated:

> For the guidance of counsel in connection with future applications, consistent with the spirit of our present rules of practice, we suggest that, where the determination or enforcement of an attorney's lien is sought, the following procedure, patterned on Artale, be employed: The attorney should make application to the court, as a step in the proceeding of the main cause, by way of

petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division, depending upon whether demand therefor has been made, R.R. 4:39-1 et seq., or without a jury if the venue of the main cause is laid in the Chancery Division. In no event should the matter be tried as a summary proceeding.

*Id.*

Several courts have interpreted the procedures outlined in *H. & H. Ranch Homes* as identifying the steps necessary for an attorney to perfect and enforce its lien in the client's claim (and related proceeds). These courts acknowledge the creation of the lien under the statute at the time services are commenced, but hold that "the attorney will lose that right which the statute affords unless the procedures are properly followed." *Hoffman & Schreiber v. Medina*, 224 B.R. 556, 563 (D.N.J. 1998).[7] The requisite procedural steps include "the requirement that the attorney provide a Pre–Action Notice to the client in compliance with New Jersey Court Rule 1:20A-6, [and] that the attorney commence a Petition to enforce the inchoate right conferred by § 2A:13-5 during the pendency of the underlying proceeding." *Id.* (as modified by *Musikoff*, 769 A.2d at 874). As at least one court has explained, these procedures and "the requirement of 'perfection' not only comports with a reasonable reading of the statute, but is also in keeping with the general purpose of 'furnishing public notice of the secure party's interest in

---

[7] For examples of cases holding that attorneys must follow the procedures in H. & H. Ranch Homes to assert valid or perfected liens under the New Jersey Attorney's Lien Statute, see *In re Roper and Twardowsky*, 559 B.R. 375, 395–396 (Bankr. D.N.J. 2016); *Lomberg & Del Vescovo, LLC v. Sash*, 2014 WL 1292670, at *5 (D.N.J. Mar. 13, 2014); *Shepisi & McLaughlin, P.A. v. LoFaro*, 64 A.3d 592, 598 (N.J. Super. Ct. App. Div. 2013).

the collateral, thereby protecting third persons against the secret or undisclosed lien." *In re Rapid Freight Sys., Inc.*, 2011 WL 1300441, at \*7 (Bankr. D.N.J. 2011).

The Defendant relies, however, on two cases that disagree with the foregoing approach and, rather, interpret the New Jersey Attorney's Lien Statute as not requiring any additional steps for perfection of the lien. *See In re Gallagher*, 283 B.R. 608 (Bankr. M.D. Fla. 2002); *Tannenbaum v. Bernea Smith, Friedman & Associates, et al. (In re Smith)*, 263 B.R. 71 (Bankr. D.N.J. 2001). For example, the court in *In re Smith* distinguished perfection of a lien from enforcement of a lien, and it viewed the procedural requirements articulated in *H. & H. Ranch Homes* as relating solely to the latter. *Id.* at 79. That court further opined that perfection of an attorney's lien is not required by the New Jersey statute, court rules, or state court decisions. *Id.* The court in *In re Gallagher* largely adopted the analysis in, and approach of, *In re Smith*. *In re Gallagher*, 283 B.R. at 612.

The Court understands the courts' reasoning in *In re Smith* and *In re Gallagher*. The New Jersey Attorney's Lien Statute is silent with respect to the validity or perfection of the lien. The Court also acknowledges that some lien statutes are very specific concerning the steps required to perfect a creditor's lien rights. The Court is persuaded, however, by the language in various New Jersey state court decisions that the New Jersey Attorney's Lien Statute requires something more than the filing of an action or pleading in order for an attorney to preserve its lien rights. In addition, at least with respect to the *In re Smith* decision, that decision was appealed, vacated, and remanded. *In re Smith*, 165 F. App'x. 961 (3d Cir. 2006).[8]

---

[8] On remand, the bankruptcy court agreed with the trustee's position that the attorney did not hold a valid statutory attorney's lien, but the attorney in the case apparently did not defend the action on substantive grounds. Rather, the attorney argued that the decision in the case reported at 263 B.R. 70 was the law of the case. The bankruptcy court on remand held that the prior bankruptcy judge had "erred and entered summary judgment on the merits of the attorney's lien claims in favor of the Trustee." *In re Smith*, 165 F. App'x. at 966–967.

New Jersey state courts addressing the New Jersey Attorney's Lien Statute have generally required strict compliance with the language of the statute, the applicable court rules, and the procedures set forth in *H. & H. Ranch Homes*.[9] *See, e.g., Schepisi & McLaughlin, P.A. v. LoFaro*, 64 A.3d 592 (N.J. Super. Ct. App. Div. 2013). In *Schepisi & McLaughlin*, the court endorsed its prior holding in *Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens*, that "an attorney's lien [is] invalid when the plaintiff 'moved for the imposition of a lien instead of filing a complaint or giving Pre-Action Notice.'" *Id.* at 598 (quoting *Cole, Schotz*, 679 A.2d 155, 158 (N.J. Super. Ct. App. Div. 1996)).[10] The court then questioned the validity of the attorney's lien in its current case because of the attorney's "apparent failure to comply with Rule 1:20A-6" and the court's inability to determine "whether [the attorney] ever filed a 'pleading containing a … cross-claim' on behalf of [the client]." *Schepisi & McLaughlin*, 64 A.3d at 599. The questions and apparent deficiencies at issue in *Schepisi & McLaughlin* apply with equal force to the facts before the Court.

The Defendant asserts a valid and perfected attorney's lien on the funds making up the Postpetition Transfer. Nevertheless, the Defendant has not offered adequate evidence to support this position. For example, other than counsel's statements, which are not evidence, the record contains only documents supporting the settlement reached to resolve a dispute between DiGeronimo and Seneca and the statement of Mr. Porter that his "firm had handled and appeared

---

[9] In addition, New Jersey practitioners appear to understand this interpretation of the statute. *See* David M. Wildstein & Cheryl E. Connors, *Demystifying the Attorney Lien: A Useful Tool for the Family Law Practitioner*, 200 N.J. L. J. 825, June 28, 2010 ("Although by operation of law, the attorney lien automatically attaches to a judicial award by filing a complaint and counterclaim, it is necessary to follow certain procedures to implement and perfect the lien. The procedural requirements for asserting a lien are set forth in the seminal case of *H&H Ranch Homes, Inc. v. Smith* ….").

[10] The court in *Schepisi & McLaughlin* also provides a thoughtful explanation of the interplay between the New Jersey Supreme Court's decision in *Musikoff* and the procedures outlined in *H. & H. Ranch Homes*. *Schepisi & McLaughlin*, 64 A.3d at 599. The court observed that *Musikoff* "specifically 'affirm[ed] the basic elements of the process articulated in *H. & H.*, except ... [it did] not interpret the process to require an attorney to file and enforce a lien petition prior to settlement or judgment of the underlying action.'" *Id*. (quoting *Musikoff v. Jay Parrino's the Mint, L.L.C.*, 796 A.2d 866, 874 (N.J. 2002)).

on behalf of DiGeronimo P.C. in [the Seneca] matter starting in the fall of 2015, in the Superior Court of New Jersey, and through a court ordered mediation, settlement was reached." Declaration of Arthur L. Porter, Jr. ¶ 4, ECF No. 10-1, attached to Defendant's Opposition and Cross Motion for Partial Summary Judgment. The record does not contain any more specifics concerning the state court litigation, such as the caption of the action or the date and extent of pleadings filed in that action. The record also is void of any suggestion that the Defendant followed the procedures outlined in *H. & H. Ranch Homes*. Accordingly, based on the current record in this adversary proceeding, the Court finds that the Defendant has not established a valid and enforceable attorney's lien on the funds making up the Postpetition Transfer.

More generally with respect to section 550 of the Code, the Court observes several other open issues and disputed issues of material fact. As explained above, the approach to section 550 articulated in *In re C.W. Mining Company* focuses on the interplay of sections 549, 550, and 502(h) of the Code. 477 B.R. 176, 184–191. Accordingly, the existence, scope, and priority of the transferee's claim against the estate under section 502(h) are relevant to the inquiry. Here, the parties appear to dispute several key facts relating to the Defendant's claim to the Postpetition Transfer and/or against the estate. For example, the Plaintiff did not acknowledge that the Defendant could assert any claim against the estate and disputed the existence and relevancy of any consent to the payment of the Postpetition Transfer to the Defendant by the prepetition debtor.[11] Record at 10:09:55 and 10:14:43. Likewise, the Defendant disputed the legal character of the Factoring Documents and the Plaintiff's claim to the Postpetition Transfer. Record at 10:18:55. Moreover, the parties failed to address certain legal issues relating to the

---

[11] At oral argument, counsel for the Plaintiff suggested that the debtor in possession was a separate entity from the prepetition debtor and not bound by the prepetition debtor's actions. Although the Court acknowledges the duties of a debtor in possession under the Code, it also is mindful that the U.S. Supreme Court has firmly rejected the separate or different entity theory in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984).

14

Defendant's alleged secured claim, such as whether sections of the Code such as section 546(b)(1)(A) permit the Defendant to complete the perfection process with respect to its attorney's lien under New Jersey law,[12] or whether New Jersey law allows such a lien to attach to the Settlement Payment if the Defendant's client no longer had an interest in those funds.[13] These additional and significant open issues further preclude summary judgment on the parties' respective rights under section 550 of the Code, as well as on the Defendant's request for partial summary judgment.

C.   The Defendant's Cross Motion for Partial Summary Judgment

The Defendant seeks partial summary judgment in this adversary proceeding on Counts I (request for turnover), III (alleged conversion), IV (fraudulent conveyance), and VI (recovery under section 550) of the Amended Complaint. The Defendant's request for summary judgment on Counts I and VI is based on its alleged valid and perfected statutory attorney's lien on the funds making up the Postpetition Transfer and must be denied for the reasons set forth in part III.B above. The Defendant's request for summary judgment on Counts III and IV is based primarily on its legal services provided in connection with the Settlement Payment, its right to receive payment for those services, and the value derived from those services. The Defendant submitted nominal evidence to support its requested relief on Counts III and IV, and the Plaintiff questioned both the Defendant's entitlement to assert a claim for legal services against the estate and the value of those services. Record at 10:14:43-10:17:10. Based on the current record, the Court finds that the Defendant failed to submit sufficient evidence to meet its burden under Civil

---

[12] *See, e.g., In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997).
[13] *See, e.g., Sauro v. Sauro*, 42 A.3d 227, 239 (N.J. Super. Ct. App. Div. 2012), *cert. denied*, 213 N.J. 389 (2013). The court in *Sauro* explained that "[t]he lien created by this statute attaches only to funds available to the parties at the time of the final disposition of the case." *Id*. at 240.

Rule 56 and that genuine issues of material fact exist on each subject Count. The Court therefore denies the Defendant's cross motion for partial summary judgment.

**IV.    Conclusion**

For all of the forgoing reasons, the Court grants the Plaintiff's Motion for Partial Summary Judgment to the extent that it seeks to avoid the Postpetition Transfer and denies the Defendant's Cross Motion for Partial Summary Judgment in its entirety. The Court will enter a separate Order consistent with this relief.

**Copies to:**    Jeremy Friedberg, Esq.
                  Andrew Cole, Esq.

**END OF ORDER**